1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

WANDA E. SMITH-JETER,

      Plaintiff,

    v.

ARTSPACE EVERETT LOFTS
CONDOMINIUM ASSOCIATION,

      Defendant.

Case No.  C14-1584-JPD

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND MOTION TO
STRIKE

### I.    INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on the motion for summary judgment filed by defendant, the ArtSpace Everett Lofts Condominium Association (the "Association").  Dkt. 46. Plaintiff Wanda E. Smith-Jeter has filed a response opposing the motion, Dkts. 51-53, to which the defendant has replied.  Dkt. 56.  A hearing was conducted on March 4, 2016.  Dkt. 59.  In its reply, defendant also seeks to strike the letter of settlement offer filed as an exhibit to plaintiff's response.  Dkt. 56 at 2; Dkt. 51, Ex. A-1 at 3-5.  After careful consideration of the parties' submissions, oral argument of the parties, the governing law and the balance of the record, the Court GRANTS defendant's motion for summary judgment, Dkt. 46, and motion to strike the letter of settlement offer, Dkt. 51, Ex. A-1 at 3-5.

ORDER - 1

II.     BACKGROUND

Plaintiff has resided with her husband, Jesse James Jeter, in the ArtSpace Everett Lofts since June 2012.  Dkt. 10.  She and her husband are both disabled African-Americans.  *Id.* ArtSpace Everett Lofts (the "ArtSpace Lofts") is a 40-unit multifamily housing community in Everett, Washington, and the property is managed by Quantum Management Services, Inc. (the "property management").  Dkt. 46 at 2; Dkt. 48 (First Heimarck Decl.) at 1; Dkt. 49 (Huang Decl.) at 2.  The named defendant, the Association, is a board of representatives from the ArtSpace Lofts and an adjacent property, Schack Arts Center, designated to address the two entities' shared expenses.  Dkt. 49 (Huang Decl.) at 2.  According to defendant, the Association does not own the ArtSpace Lofts or conduct its daily management.  Dkt. 46 at 2. Neither the property management nor any of its employees have been named as defendants in the present suit.  Dkts. 10, 42.

Plaintiff and her husband first applied for tenancy at ArtSpace Lofts in May 2012.  Dkt. 46 at 1; Dkt. 52 (Smith-Jeter Decl.) at 2-3.  It is undisputed that, in order to accommodate plaintiff, the property management offered numerous move-in benefits, including (1) a total of twelve months of reduced rent at $859.00 per month; (2) a total of $488.00 move-in rent credit applied to plaintiff's May and June 2012 rent; and (3) two months of free parking.  Dkt. 48 (First Heimarck Decl.) at 4-5.  On May 30, 2012, plaintiff and her husband signed the rental lease and subsequently moved into unit 310 of the subject property.  Dkt. 52-1 (Smith-Jeter Decl.), Ex. B-4 (2012 Lease Agreement) at 15; Dkt. 46 at 3.

However, plaintiff alleges that Heidi Heimarck, the on-site Resident Manager of the ArtSpace Lofts, also verbally promised to further reduce her rent to 50% of the combined income of plaintiff and her husband.  Dkt. 52 (Smith-Jeter Decl.) at 2-3.  Ms. Heimarck denies ever making such a promise.  Dkt. 48 (First Heimarck Decl.) at 4.  Shortly after plaintiff moved into the unit, plaintiff repeatedly questioned Ms. Heimarck regarding reducing her rental payment, and Ms. Heimarck was non-responsive.  Dkt. 52 (Smith-Jeter Decl.) at 2-3;

Dkt. 52-1 (Smith-Jeter Decl.), Ex. C (November 30, 2012 Email) at 23.  In the meantime, plaintiff claims that she also filed oral and written complaints with Ms. Heimarck against her neighbor, Kelly Ann Mullen, alleging stalking and harassment.[1]  Dkt. 42 at 1.  Plaintiff believes that, as a result of her repeated inquires about the reduced rent and complaints against Ms. Mullen, the property management retaliated against her and her husband by engaging in both discriminatory housing practices and physical harassment.  Dkt. 52 (Smith-Jeter Decl.) at 2-3.

On October 22, 2014, plaintiff initiated this action.  Dkt. 4.  She is proceeding pro se.  Subsequently, plaintiff filed three amended complaints on November 24, 2014, December 29, 2014, and July 6, 2015, respectively.  Dkts. 4, 10, 42.  Plaintiff appears to allege four causes of action against defendant: (1) a claim of housing discrimination based on the race and disabilities of plaintiff and her husband in violation of Section 3604 of the Fair Housing Act (the "FHA"), 42 U.S.C. § 3604; (2) a claim of retaliation in violation of Section 3617 of the FHA, 42 U.S.C. § 3617; (3) a claim of fraud in leasing the apartment to plaintiff; and (4) a hate crime claim.  Dkts. 10, 42.

Defendant filed its answer on February 11, 2015.  Dkt. 18.  On January 4, 2016, defendant filed the instant motion for summary judgment.  Dkt. 46.  Plaintiff opposed the motion, Dkts. 51-53, and defendant replied.  Dkts. 56-58.  A hearing was conducted on March 4, 2016.  Dkt. 59.

III.     JURISDICTION

Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter heard by the undersigned United States Magistrate Judge.  *See* Dkts. 22, 30.  The Court has subject

---

[1] Plaintiff claims that, ever since she moved in the unit, there were ongoing conflicts among Ms. Mullen, the property management and other residents. Dkt. 42 at 2.  The conflicts appeared to revolve around Ms. Mullen's gender identify.  *Id.*  Plaintiff claims that she was harassed and stalked by Ms. Mullen because plaintiff refused to get involved in the conflicts.  *Id.* at 5-6.  Plaintiff claims she subsequently met with the on-site property managers to report the harassment, and filed a written complaint against Ms. Mullen.  *Id.* at 1-3.  However, plaintiff is unable to supply a copy of the written complaint.  *Id.* at 3.

ORDER - 3

1   matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  Venue is proper under 28 U.S.C. §

2   1391(b).

3                                IV.    DISCUSSION

4        A.    Summary Judgment Standard

5            A moving party is entitled to summary judgment when there are no genuine issues of

6   material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R.

7   Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  An issue of fact is

8   "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the

9   nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine

10  issue of fact is "material" if it "might affect the outcome of the suit under the governing law."

11  *Id.*

12           When applying these standards, the Court must view the evidence and draw reasonable

13  inferences therefrom in the light most favorable to the nonmoving party.  *See United States v.*

14  *Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).  The moving party can carry its

15  initial burden by producing evidence that negates an essential element of the nonmoving

16  party's claim, or by establishing that the nonmoving party does not have enough evidence of an

17  essential element to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v.*

18  *Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

19           Once the moving party has met this burden, the nonmoving party then must show that

20  there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  The nonmoving party must do

21  more than simply deny the veracity of everything offered by the moving party or show a mere

22  "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

23  *Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of

24  the plaintiff's position will be insufficient; there must be evidence on which the jury could

25  reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The nonmoving party's failure

26  of proof concerning an essential element of its case necessarily "renders all other facts

ORDER - 4

immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex*, 477 U.S. at 327.

>    B.    Defendant's Miscellaneous Motions

>        1)    *Motion to Strike Settlement Offer Letter*

Defendant moves to strike a letter of settlement offer, which is labeled Exhibit A-1 to plaintiff's response. Dkt. 56 at 2. The letter is a settlement offer dated August 4, 2015, and the title of the letter clearly indicates that the letter was "MADE PURSUANT TO [FEDERAL RULE OF EVIDENCE] 408." Dkt. 51, Ex. A-1 at 3. Plaintiff does not suggest that the settlement offer is offered for any purpose other than to prove defendant's liability. Dkt. 51 at 1. Such evidence, however, is inadmissible under the Fed. R. Evid. 408. *See Rivera v. McGaffey*, No. C11-5942, 2013 WL 5314426, at *9 (W.D. Wash. Sept. 23, 2013). Therefore, the Court grants defendant's motion to strike the letter of settlement attached to plaintiff's response. Dkt. 51, Ex. A-1 at 3-4.

>        2)    *Evidence Irrelevant to Any Claim or Defense*

Defendant further contends that several of the attachments to plaintiff's response are irrelevant to any claim or defense. Dkt. 56 at 2. Specifically, plaintiff supplies a copy of her resume as Exhibits D-1 and D-2 and her husband's artist statement as Exhibit D-3 to support their credibility as "character references." Dkt. 52 (Smith-Jeter Decl.) at 3-4; Dkt. 52, Exs. D-1–D-3 at 24-26. The Court declines to consider these attachments as the Court may not make credibility determinations in the context of a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Nor is it necessary, because the Court must draw all reasonable inferences in favor of plaintiff. *Id.*

Defendant also argues that plaintiff's Certification of Attendance for Renter Certification Training, labeled Exhibit A-7, is irrelevant. Dkt. 56 at 2; Dkt. 52-1 (Smith-Jeter Decl.), Ex. A-7 at 9. However, plaintiff's contention that the "third party social services agency assistance . . . merely resulted in a 'Renter Certification of Training' and included no

financial assistance (see exhibit 'A-7')" implies that this evidence is relevant, however tangential, to plaintiff's discrimination claim.  Dkt. 52 (Smith-Jeter Decl.) at 1.  Thus, the Court considers this evidence that plaintiff completed the social services agency training program recommended by the property management, along with other admissible evidence. Dkt. 52-1 (Smith-Jeter Decl.), Ex. A-7 at 9.

3)      *New Allegations in Plaintiff's Responsive Brief*

Defendant argues that, in opposing the instant motion, plaintiff raises many "completely new allegations that have not been raised by [plaintiff] in any prior proceedings or responses to discovery, and should therefore be stricken."  Dkt. 56 at 2.  However, defendant fails to specify which allegations are so "completely new" that they should be stricken.  "[T]he Court has held *pro se* pleadings to a less stringent standard than briefs by counsel and reads *pro se* pleadings generously, however inartfully pleaded."  *Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008).  In light of the fact that defendant fails to specify which allegations should be stricken on this basis, the Court denies defendant's motion to strike new allegations.

4)      *Statute of Limitations*

Defendant further argues that, due to the two-year statute of limitations, any alleged incidents relating to plaintiff's lease that took place prior to November 2012 should be stricken because the present case was filed in November 2014.[2]  Dkt. 56 at 3.  Defendant identifies three incidents that it believes should be barred as untimely: (1) an alleged verbal promise made by Ms. Heimarck in May 2012 to reduce plaintiff's rent to 50% of her family income; (2) the $400.00 move-in rent credit offered in June 2012; and (3) the compliance notices sent to plaintiff in October 2012.  *Id.*

Defendant's argument lacks merit.  Defendant appears to be referring to the two-year statute of limitations under the FHA.  *See* 42 U.S.C. § 3613(a)(1)(A).  "Under the continuing violation doctrine, when a plaintiff pursuant to the Fair Housing Act, 'challenges not just one

_____

[2] The present case was actually filed on October 22, 2014.  Dkt. 4.

incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed' within two years of 'the last asserted occurrence of that practice.'"  *Patton v. Hanassab*, No. 14cv1489 (WVG), 2015 WL 589460, at \*7 (S.D. Cal. Feb. 12, 2015) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982)); *see also* 42 U.S.C. § 3613(a)(1)(A).

In the present case, even though the alleged verbal promise to reduce rent was made in May 2012, plaintiff alleges that defendant has continued to refuse to honor this promise until the present time. Dkt. 52 (Smith-Jeter Decl.) at 3.  Similarly, plaintiff alleges that defendant has continued to refuse to apply the $400.00 move-in rent credit to her account until the present time even though the credit was initially offered in June 2012. *Id.* at 2.  Finally, plaintiff appears to allege that the compliance notices issued in October 2012 were part of the property management's continuing effort to evict plaintiff and her husband. *Id.* at 2-3. Because the last occurrences of the allegedly offensive practices were all well within the two-year period prior to the filing of the present suit, the Court declines to strike the allegations on statute of limitations grounds.

C.    <u>Article III Case or Controversy Requirement</u>

At the outset, defendant contends that this action must be dismissed because none of the allegedly unlawful conduct is fairly attributable to the named defendant.  The jurisdiction of a federal court is limited to actual cases and controversies.  U.S. Const. art. III, § 2, cl. 1. Before invoking the court's authority, a plaintiff must establish standing by showing that (1) plaintiff has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  For the second element of causal connection, the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

In the present case, the named defendant appears to have no connection with any of the allegedly unlawful conduct.  According to the testimony of Cindy Huang, the subject property is managed by the property management company, Quantum Management Services, Inc., which is not a named party to the case.  Dkt. 49 (Huang Decl.) at 1.  The named defendant, the ArtSpace Everett Lofts Condominium Association, is a board of representatives from the ArtSpace Lofts and an adjacent property, Schack Arts Center, designated to address the two entities' shared expenses.  *Id.* at 2.  Defendant contends that the Association is merely a "loose association" of residents and it is not involved in the daily management of the subject property.  Dkt. 46 at 2.  Further, two of the key individuals accused of misconduct, Heidi Heimarck and William ("Liam") Cole, are Quantum Management's employees who do not work for the Association.  Dkt 47 (Cole Decl.) at 1; Dkt. 48 (First Heimarck Decl.) at 1.  Consequently, none of the alleged conduct of discrimination, retaliation, fraud and hate crimes can be fairly attributed to the name defendant, ArtSpace Everett Lofts Condominium Association.  Rather, the acts alleged by plaintiff are attributable to non-parties, such as the property management and its employees.

In her response, plaintiff does not raise any argument to dispute this contention.  This case must therefore be dismissed for lack of a case or controversy under Art. III.  However, plaintiff's error in naming an improper defendant must be balanced against defendant's conduct to date.  Prior to the instant motion, defendant had ample opportunities to point out this deficiency, but nonetheless made no mention of it to the Court.  Specifically, defendant gave no hint that it was not a proper party to the suit in its motions for more definite statements and its Joint Status Report.  Dkts. 7, 13, 22.  Indeed, defendant filed its corporate disclosure statement, its Answer, and a motion to continue trial as if plaintiff had named the correct defendant.  Dkts. 8, 18, 44.  For example, in the Answer, defendant denied plaintiff's specific allegation that Ms. Heimarck and Mr. Cole physically harassed plaintiff, even though Ms. Heimarck and Mr. Cole do not work for defendant.  Dkt. 18 at 2.  Rather than promptly raising

1   this issue, defendant waited until the eve of trial to do so, even though defendant was well

2   aware that plaintiff is proceeding pro se.  In light of this litigation conduct, the Court would

3   permit the plaintiff to amend her complaint to join the proper parties, pursuant to Fed. R. Civ.

4   P. 19.  However, as discussed below, any amendment to join the proper parties would be futile.

5   *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (holding that a

6   district court need not allow amendment of a complaint if such amendment would be futile).

7           D.        <u>The Merits of Plaintiff's FHA Discrimination Claim</u>

8           Assuming plaintiff had correctly named the property management and its employees as

9   defendants, she fails to produce sufficient evidence to establish a genuine issue of material fact

10  with respect to her FHA discrimination claim.  Specifically, she identifies four separate

11  incidents as amounting to discriminatory housing practices:[3]

    (1)    The property management allegedly has continued to refuse to honor a prior
12              verbal promise to reduce plaintiff's rent to 50% of the combined family
13              income of plaintiff and her husband.  Dkt. 52 (Smith-Jeter Decl.) at 3.

14      (2)    The property management offered plaintiff a $400.00 rent credit on June 11,
15              2012, but never applied the credit to her account.  *Id.* at 2.

16      (3)    In October 2012, the property management issued a "3-DAY NOTICE TO
17              PAY RENT OR VACATE" and a "10-DAY NOTICE TO COMPLY WITH
            LEASE OR QUIT PREMISES" (the "compliance notices") as a result of
18              plaintiff's overdue rental payment.  Dkt. 48 (First Heimarck Decl.), Ex. A (3-
            Day and 10-Day Notices) at 8-9.  Subsequently, the defendant referred her to
19              a third-party social services agency for a renter's training which resulted in
20              no financial assistance.  Dkt. 52 at 1.  Plaintiff eventually paid the
            outstanding balance by the due date listed in the notices.  Dkt. 52 (Smith-
21              Jeter Decl.) at 2.  Plaintiff argues that defendant's conduct constituted a
            discriminatory housing practice because "defendant failed to give the
22              plaintiff '30-days notice of eviction' as required by law" and "there were
23              other tenants who hadn't paid rent in months and did not receive eviction
            notices."  *Id.* at 1-2.

---

24

25   [3] In defendant's motion for summary judgment, defendant appears to respond to a perceived fifth
allegation that the property management never issued a Department of Housing and Urban Development ("HUD")
26   Section 8 housing voucher to plaintiff.  Dkt. 46 at 5.  However, plaintiff never put forth this allegation in any part
of her pleadings.  *See* Dkts. 10, 42, 51-53.  Consequently, the Court declines to address it.

ORDER - 9

(4) In October 2015, the property management increased plaintiff's rent to $936 per month in plaintiff's new lease, which constituted an approximately 6% increase of her rent. Dkt. 52 (Smith-Jeter Decl.) at 3; Dkt. 52-1 (Smith-Jeter Decl.), Exs. B-1–B-11 at 12-22.  Plaintiff contends that this increase is in excess of the "3% rent increase cap" which allegedly is applied to other tenants' rent. Dkt. 52 (Smith-Jeter Decl.) at 3.

Thus, plaintiff appears to allege housing discrimination based upon a disparate treatment theory under Section 3604 of the FHA, 42 U.S.C. § 3604.  She contends that the alleged discrimination was based upon the race and disabilities of plaintiff and her husband. As discussed below, plaintiff's housing discrimination claim fails as a matter of law.

   1)    *Plaintiff Fails to Present a Prima Facie Case of Discrimination*

The FHA prohibits certain discriminatory conduct relating to the sale or rental of housing.  Specifically, the statute provides:

> [It shall be unlawful to] discriminate against any person in the terms, conditions, or privileges of sales or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).  To succeed on a FHA discrimination claim under the disparate treatment theory, a plaintiff is first required to present a prima facie case of discrimination by showing that: "(1) plaintiff is a member of a protected class; (2) plaintiff applied for [a benefit of treatment] and was qualified to receive it; (3) the [benefit of treatment] was denied despite plaintiff being qualified; and (4) defendant approved [the benefit of treatment] for a similarly situated party during a period relatively near the time plaintiff was denied its [benefit of treatment]." *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).

Defendant does not dispute that plaintiff is a member of a protected class as a disabled African American.  However, defendant argues that plaintiff fails to supply evidence to establish the remaining *Gamble* elements for each of the allegedly discriminatory housing practices to present a prima facie case of discrimination under the FHA.

With respect to plaintiff's allegation that the property management promised to reduce her rent to 50% of her family income, plaintiff fails to show the second *Gamble* element that she was qualified for such a benefit of treatment.  The only evidence offered to demonstrate plaintiff's qualification was an email from Heidi Heimarck stating "your request is reviewed" without any explanation of what "request" is being reviewed. Dkt. 52-1 (Smith-Jeter Decl.), Ex. C at 23.  The Court declines to infer an entitlement to a reduced rent from such evidence. Further, plaintiff fails to establish the fourth *Gamble* element that she was treated differently from a similar situated party who is not a member of the protected class, because plaintiff does not allege that a reduced rent based on a resident's family income was promised and/or given to anyone else.

With respect to the allegation that defendant has refused to apply the $400.00 move-in rent credit which was promised to her on June 11, 2012, plaintiff fails to establish the third *Gamble* element that she was denied a benefit of treatment at all.  Plaintiff only supplies the payment receipts from July 2012 to December 2012, as well as a payment receipt titled "Move-in Special" which reflects that a $400.00 payment was received in plaintiff's account.  Dkt. 52-1 (Smith-Jeter Decl.), Exs. A-1, A-2, A-9 (2012 Payment Receipts) at 1-4, 11.  Plaintiff's evidence therefore excludes the payment receipt for June 2012, which would allow the Court to determine whether such credit was applied that month.  *Id.*  Defendant, on the other hand, supplies several documents including the Event History Report of plaintiff's account which clearly indicates that the $400.00 credit was applied to plaintiff account on June 13, 2012.  Dkt. 57-1 (Second Heimarck Decl.), Ex. 6 (Event History Report) at 32.

As to plaintiff's allegation that defendant improperly issued the 3-Day notice and the 10-Day notice in October 2012, plaintiff fails to show the second *Gamble* element that she was qualified for a benefit.  Plaintiff appears to rely on an email from Heidi Heimarck dated October 23, 2013, to show that she was entitled to some leniency on her rental payment.  Dkt. 52-1 (Smith-Jeter Decl.), Ex. A-8 (October 23, 2013 Email) at 10.  The October 23, 2013 email

indicates that, for any resident with an outstanding balance in his or her account, the property management would stop issuing "Friendly Reminder notices," but rather directly issue a 3-Day notice and a 10-Day notice. *Id.* Plaintiff suggests that defendant denied her the leniency of the "Friendly Reminder notices" a year before this official change of policy. Dkt. 52 (Smith-Jeter Decl.) at 2. Even though this evidence indicates some inconsistency in the property management's noticing policy, it does not demonstrate that plaintiff's entitlement to such leniency under the FHA. Plaintiff's leasing agreement specifically states that "Tenant shall pay Landlord monthly rent of $859.00 in full, in advance on or before the first day of each calendar month . . . [and any] delinquency in rent following such an application of fund will subject to a 3-day pay or vacate notice." Dkt. 52-1 (Smith-Jeter Decl.), Ex. B-4 at 15.

Nor does plaintiff establish the fourth *Gamble* element that she was treated differently from a similarly situated individual with respect to this allegation. Plaintiff merely alleges that "there were other tenants who hadn't paid rent in months and did not receive eviction notices" without providing concrete evidence. Dkt. 52 (Smith-Jeter Decl.) at 2. This bare allegation is insufficient to establish disparate treatment. *See Brooks v. Seattle Hous. Auth.*, No. C12-0878-JCC, 2015 WL 3407415, at *2-3 (W.D. Wash. May 26, 2015) (holding that a mere allegation that defendant served her a 10-Days notice for failure to pay rent, but did not serve some other tenants, is insufficient to establish disparate treatment). Defendant also refuted this allegation by supplying numerous compliance notices served to other residents of the ArtSpace Lofts, including notices issued on the same date as plaintiff's notices. *See* Dkt. 57-1 (Second Heimarck Decl.), Ex. 1 (Compliance Notices) at 2-9.

Finally, plaintiff alleges that the property management increased her rent by almost 6% in October 2015 in excess of the "3% rent increase cap." However, plaintiff fails to establish the second *Gamble* element that she was qualified for this benefit of treatment with respect to this claim. None of the evidence supplied by plaintiff suggests that there was a "3% rent increase cap" applied to her or any other tenant's rent. *See* Dkt. 52-1 (Smith-Jeter Decl.), Exs.

B-1–B-11 at 12-22.  Although a March 30, 2014 letter from the Portfolio Manager to plaintiff stated that "your current rent will be increased by 3% from $859 to $885 per month," his letter does not establish plaintiff's entitlement to a 3% rent increase cap for her 2015 lease.  Dkt. 52-1 (Smith-Jeter Decl.), Ex. B-5 (March. 30, 2014 Letter) at 16.  Nor does any language in plaintiff's lease agreements suggest that there was such a 3% rent increase cap.  Dkt. 52-1 (Smith-Jeter Decl.), Ex. B-3, B-4 (Lease Agreements) at 14, 15.  For the very same reason, plaintiff also fails to establish the fourth *Gamble* element that she was treated differently from a similarly situated individual because there is no proof that a 3% rent increase cap was applied to another resident at the ArtSpace Lofts.

Thus, plaintiff fails to present a prima facie case of discrimination under *Gamble*.  For each allegedly discriminatory housing practice, plaintiff cannot show that she was denied a benefit of treatment that she was qualified for.  Nor can she demonstrate that she was treated differently than any other similarly situated party who is not a member of the protected class.

2)     *Plaintiff Fails to Present Evidence of a Discriminatory Motive*

"In lieu of satisfying the elements of a prima facie case, a plaintiff may also 'simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated' the challenged decision."  *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122-23 (9th Cir. 2004)).  Proof of discriminatory motive is "crucial to a disparate treatment claim." *Gamble*, 104 F.3d at 305.  When a plaintiff successfully provides direct and circumstantial evidence of discriminatory motive, she has established a prima facie case of discrimination and may be able to survive a motion for summary judgment on that evidence alone.  *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985).

In the present case, plaintiff does not supply any direct or circumstantial evidence demonstrating a discriminatory motive.  In attempting to associate all the allegedly offensive practices with a discriminatory motive, plaintiff generally alleges that "[t]he sheer volume of

these incidents has convinced me that these were hate crimes committed against us because of our race and disabilities." Dkt. 10 at 2.  Plaintiff further contends that "I believe these harassment and retaliatory practices on the part of the defendant . . . are based on bias because of my race[.]" Dkt. 42 at 3.  Unfortunately for plaintiff, mere allegations are insufficient to survive defendant's summary judgment motion.  *See Collins v. Chesapeake Commons Holdings, LLC*, No. CIV-09-1816, 2011 WL 2580360, at *4 (E.D. Cal. June 28, 2011).

   3) *Defendant Articulates Legitimate Nondiscriminatory Reasons*

  Even if plaintiff established a prima facie case of discrimination, plaintiff still cannot succeed on her FHA discrimination claim because the property management articulates legitimate nondiscriminatory reasons for its actions.  A prima facie case of discrimination is not the equivalent of a finding of actual discrimination, but rather creates an inference of discriminatory animus that the action was more likely than not based on impermissible considerations.  *See Sanghvi v. City of Claremont*, 328 F.3d 532, 537 (9th Cir. 2003).  Once a plaintiff proves her prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for its action." *Gamble*, 104 F.3d at 305.  If the defendant meets its burden, the presumption of discrimination raised by the prima facie case "simply drops out of the picture."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993); *Sanghvi*, 328 F.3d at 537.  Then, in order to prevail, the plaintiff must demonstrate that the alleged reason for the adverse action is merely a pretext for a discriminatory motive.  *St. Mary's Honor Ctr.*, 509 U.S. at 510.

  Defendant articulates a legitimate and nondiscriminatory reason for each of its actions that form the basis of plaintiff's complaints.  With respect to plaintiff's allegation that the property management refused to reduce plaintiff's rent to 50% of her family income, the property management explained that the ArtSpace Lofts is a participant in the Washington State Tax Credit Program, which set rental rates based on the area median income.  Dkt. 49 (Huang Decl.) at 2-3.  Defendant further points out that the website of the ArtSpace Lofts

specified that "[h]alf of the units [in ArtSpace Lofts] are for artists earning less than 50% of area median income and half are for artists learning [sic] less than 60% of area median income." *Id.* With respect to the allegation that the property management discriminatorily initiated the "eviction" process by issuing the compliance notices, defendant points out that the compliance notices were issued to plaintiff for her failure to pay the rent due, in compliance with both the lease agreement and the controlling law. Dkt. 56 at 3. With respect to the allegation that defendant improperly increased plaintiff's rent by almost 6% in October 2015, defendant explained that, since plaintiff obtained a HUD Section 8 voucher, she needed to sign a new lease and her new rent was jointly determined by the Everett Housing Authority (EVHA) and the Washington State Tax Credit Program. Dkt. 57 (Second Heimarck Decl.) at 6. The increase in October 2015 was approved by the Voucher Specialist at EVHA, and the amount of payment plaintiff had to make actually decreased after signing the new lease. *Id.*; Dkt. 52-1 (Smith-Jeter Decl.), Ex. B-1 (October 19, 2015 Email) at 12.

Thus, defendant articulates a legitimate and nondiscriminatory reason for each of defendant's actions at issue. Plaintiff does not show that any of these reasons is merely a pretext for a discriminatory motive. Because plaintiff fails to establish a prima facie case of discrimination, and because any potential prima facie case of discrimination is refuted by a legitimate and nondiscriminatory reason, plaintiff fails to show that there are genuine issues of material fact for trial on her FHA discrimination claim.

E.    The Merits of Plaintiff's FHA Retaliation Claim

Plaintiff also appears to allege a claim of retaliation under the FHA, 42 U.S.C. § 3617. Plaintiff's theory appears to be that, because she filed complaints against her neighbor, Ms. Mullen, and she repeatedly questioned Ms. Heimarck regarding reducing her rent, the property management retaliated against her by engaging in both discriminatory housing practices and physical harassment. Dkts. 10, 42; Dkt. 52 (Smith-Jeter Decl.).

1      For the alleged physical harassment, plaintiff generally states that the property

2  management "repeatedly conspired with others to stalk and harass" plaintiff and her husband

3  until plaintiff contacted the Everett Police Department in August 2014.  Dkt. 10.  The specific

4  alleged incidents include:

5      (1)   Ms. Heimarck and William ("Liam") Cole, the on-site Building and
           Facilities Manager, "sic[ced]" a pit bull dog on plaintiff and her husband.
6           Dkt. 10 at 2.

7      (2)   In the winter of 2013-2014, Ms. Heimarck held plaintiff and her husband in
8           the garage against their will for ten minutes.   Dkt. 10 at 2; Dkt. 53 (Jeter
           Decl.) at 1.
9
       (3)   Defendant or other tenants vandalized plaintiff's vehicle.  Dkt. 10 at 2; Dkt.
10          53 (Jeter Decl.) at 4.

11     (4)   On two separate occasions, plaintiff returned home and found "a rope that
12          has been tied into the shape of a 'noose' and laid stretched out in the
           hallway a mere couple of feet from [her] apartment door, where [she] would
13          have to step across it or walk around it to enter [her] unit."  Dkt. 42 at 3.

14     The FHA protects individuals from certain types of retaliatory conduct by making it

15  "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or

16  enjoyment of" his/her housing rights under the FHA.  *See* 42 U.S.C. § 3617.  To succeed on a

17  retaliation claim, a plaintiff is required to first establish a prima facie case of retaliation by

18  showing that "(1) he engaged in a protected activity; (2) the defendant subjected him to an

19  adverse action; and (3) a causal link exists between the protected activity and the adverse

20  action."  *Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001).

21     For the first *Walker* element, a "protected activity" must relate to the exercise of an

22  individual's housing rights "granted or protected by section 3603, 3604, 3605, or 3606" of the

23  FHA.  42 U.S.C. § 3617; *Hamilton v. Lincoln Mariners Assoc. Ltd.*, No. 14cv1689-WQH

24  (NLS), 2014 WL 5180885, at *6 (S.D. Cal. Oct. 14, 2014) (holding that plaintiff's unilateral

25  installation of security cameras on the leased property was unrelated to any housing right under

26

the FHA and, thus, did not constitute a protected activity).  Examples of protected activities include filing a formal HUD complaint, *see*, *e.g.*, *United States v. Barber*, No. C13-5539, 2014 WL 4988200, at *9 (W.D. Wash. Oct. 7, 2014); requesting a reasonable accommodation for disability, *see*, *e.g.*, Bezi *v. Camacho*, No. CV SA11-0677, 2014 WL 2215911, at *8 (C.D. Cal. May 23, 2014); sending a letter to defendant asserting plaintiff's rights under fair housing laws, *see*, *e.g.*, *Manzo v. Hall Vineland Prop., LLC*, No. C10-05279, 2012 WL 608403, at *3 (N.D. Cal. Feb. 24, 2012); and filing informal complaints to property management regarding race discrimination and disability accommodations, *see*, *e.g.*, *Sturm v. Davlyn Inv., Inc.*, No. CV 12-07305, 2014 WL 2599903, at *6 (C.D. Cal. Jan. 27, 2014).

   As an initial question, it is unclear what "protected activity" plaintiff is asserting. Plaintiff suggests that her repeated requests to have her rent reduced constituted a "protected activity," presumably under the FHA provision governing the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith."  *See* 42 U.S.C. § 3604(b).  However, to establish a protected activity based on an underlying claim pursuant to § 3604(b), plaintiff needs to demonstrate that her access to contract provisions, services or facilities was restricted because of her membership in a protected class.  *See Bezi*, 2014 WL 2215911, at *14.  As previously discussed, plaintiff demonstrates neither her qualification for a reduced rent, nor that she was denied such a benefit due to her membership in the protected class and others were granted such a benefit. Consequently, plaintiff fails to demonstrate her repeated inquiries regarding reduced rent constitute a "protected activity" for the purpose of the retaliation claim.[4]

---

[4] Plaintiff further contends that she filed oral and written complaints with the property management against her neighbor alleging stalking and harassment. Dkt 42 at 1-3.  She appears to argue that this incident also constitute a "protected activity."  Dkt. 53 at 3.  Plaintiff indicates that she filed the complaints because she refused to get involved in the ongoing conflicts among that neighbor, the property management and other residents.  Dkt. 42 at 2.  Nothing in plaintiff's pleadings suggests that the complaints against the neighbor related to any racial discrimination against plaintiff, or non-accommodation of a disability.  Consequently, it is unclear how these complaints in any way implicated plaintiff's housing rights under the FHA to constitute a "protected activity."

1    For the second *Walker* element, an "adverse action" must be in the form of coercion,

2  intimidation, threats, or interference.[5]   *Walker*, 272 F.3d at 1128-29.   Defendant argues that

3  plaintiff fails to supply sufficient evidence to establish any "adverse action" of discriminatory

4  housing practice or physical harassment.   As discussed above, plaintiff fails to establish a

5  prima facie case of any discriminating housing practice.

6    With respect to the allegations of physical harassment, plaintiff first generally alleges

7  that two employees, William ("Liam") Cole and Heidi Heimarck, who are spouses, have

8  "repeatedly conspired with others to stalk and harass" plaintiff and her husband without

9  providing specifics.   Dkt. 10 at 2.   Mr. Cole and Ms. Heimarck both supplied declarations

10 denying this general allegation.   Dkt. 47 (Cole Decl.) at 2; Dkt. 48 (First Heimarck Decl.) at 2.

11 Cindy Huang from the property management also testified that she was unaware of any conflict

12 between the plaintiff and the property management prior to this suit.   Dkt. 49 (Huang Decl.) at

13 3-4.   Plaintiff also alleges that she contacted the Everett Police Department in August 2014 to

14 report these harassment incidents.   However, the corresponding police record indicates "NO

15 EVIDENCE OF ANY HARASSMENT."   Dkt. 48 (First Heimarck Decl.), Ex. B (Police

16 Record) at 13.   Ms. Heimarck also confirmed that the police department never contacted the

17 property management as a result of this report.   Dkt. 48 (First Heimarck Decl.) at 5

18    As to specific incidents of the alleged physical harassment, plaintiff contends that Mr.

19 Cole and Ms. Heimarck (1) "sic[ced]" a dog on plaintiff and her husband, (2) vandalized

20 plaintiff's vehicle, and (3) placed a noose-shaped rope outside plaintiff's apartment door.[6]

21 However, plaintiff provides only bare allegations of these incidences, which are insufficient for

22

23    [5] The HUD has identified five non-exclusive examples of the type of conduct prohibited under § 3617.
24 C.F.R. § 100.400.   Examples include "[t]hreatening, intimidating or interfering with persons in their enjoyment
of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons,
24 or of visitors or associates of such persons" and "[r]etaliating against any person because that person has made a
complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act. 24 C.F.R.
25 § 100.400(2), (5).

26    [6] At the hearing on the summary judgment motion, plaintiff acknowledged that the noose-shaped rope
was not left by Mr. Cole or Ms. Heimarck, but by a visitor to her neighbor.

ORDER - 18

1    the jury to reasonably find for her.  *Anderson*, 477 U.S. at 252.  Mr. Cole and Ms. Heimarck

2    also specifically deny these allegations in their declarations.  Dkt. 47 (Cole Decl.) at 2-3; Dkt.

3    48 (First Heimarck Decl.) at 2-3.

4            The only allegation that plaintiff supports with a third-party declaration is the claim that

5    Ms. Heimarck held plaintiff and her husband against their will for approximately ten minutes.[7]

6    Dkt. 53 (Jeter Decl.).  In the declaration, plaintiff's husband Mr. Jeter asserts that:

7                   Heidi started her car, drove it horizontally across the back of my
                    van blocking us in our parking space leaving her car running and
8                   walked up to the driver's side door window.  I rolled down the
                    window, Heidi stuck her head in and asked, "What's wrong with
9                   your van?  Does it need a tune-up or something?"  I told Heidi that
                    there was nothing wrong with my van, that it is cold, old and
10                  hadn't been started in weeks.

11                  . . .

12                  On this particular morning, Heidi insisted that she thinks
                    something is wrong with my van and she was going to go back
13                  upstairs and get [her husband Liam, the on-site Building and
                    Facilities Manager,] and see what he thought.  We told Heidi that
14                  we didn't have time, as we were already late, but she said, "No,
                    No, I'm going up to get Liam and bring him back with me to see
15                  what he thinks."

16                  . . .

17                  Heidi kept walking toward the elevator and returned in about ten
                    (10) minutes without Liam.  Heidi said, "Liam couldn't come
18                  right now, so I have to go."  Heidi got into her car and drove out
                    of the parking garage.
19

20   Dkt. 53 (Jeter Decl.) at1-3.  Even taking this allegation as true, plaintiff still fails to establish

21   the third *Walker* element that there was a causal link between this adverse action and the

22   alleged protected activities.  Plaintiff simply states that she "believes" that all the alleged

23   adverse actions were retaliations for her repeated requests for reducing her rent and her

24

25   _____

26       [7] Ms. Heimarck, on the other hand, denies this allegation in its entirety.  Dkt. 48 (First Heimarck Decl.)
     at 2-3; Dkt. 57 (Second Heimarck Decl.) at 6.

1    complaints against a neighbor, but nonetheless points to no evidence beyond her bare

2    allegations.[8]  Dkt. 52 (Smith-Jeter Decl.) at 2-3.

3        Accordingly, plaintiff fails to demonstrate genuine issues of material fact on her FHA

4    retaliation claim.  Specifically, plaintiff fails to establish that she engaged a "protected

5    activity" under the FHA.  Plaintiff also fails to establish a genuine issue of material fact for

6    trial on any alleged "adverse action" by defendant.

7        F.    The Merits of Plaintiff's Fraud Claim

8        Plaintiff alleges that the property management committed "deliberate acts of fraud

9    involving our lease [that] have rendered a delinquent rental payment record on our part[.]"

10   Dkt. 10 at 3.  It is not apparent what circumstances constitute these alleged "deliberate acts of

11   fraud" from the pleadings.  "Rule 9(b) demands that the circumstances constituting the alleged

12   fraud be specific enough to give defendant notice of the particular misconduct . . . so that they

13   can defend against the charge and not just deny that they have done anything wrong."  *Kearns*

14   *v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  "Any averments which do not meet

15   that standard should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule

16   9(b)."  *Id.*  Accordingly, "[t]o avoid dismissal for inadequacy under Rule 9(b), [the] complaint

17   would need to state the time, place and specific content of the false representation as well as

18   the identities of the parties to the misrepresentation."  *Edwards v. Martin Park, Inc.*, 356 F.3d

19   1058, 1066 (9th Cir. 2004).

---

22   [8] The alleged retaliatory action of holding plaintiff against her will took place in the winter of 2013-2014,
23   whereas the alleged protected activities took place soon after the plaintiff moved into the ArtSpace Lofts in June
     2012. Dkt. 53 (Jeter Decl.) at 1; Dkt. 52 (Smith-Jeter Decl.) at 2-3.  In other words, this alleged retaliatory action
     took place more than a year after the alleged protected activities.  The Ninth Circuit has stated "that, in some
24   cases, causation can be inferred from timing alone where an [adverse action] follows on the heels of protected
     activity."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).  However, the adverse action
25   "must have occurred fairly soon" after the protected activity, and a year lapse is "simply too long."  *Id.* (holding
     that a gap of six months was too long to establish a causal link).  The same reasoning applies equally to the
26   allegation that the property management increases plaintiff's rent by almost 6% in October 2015, approximately
     three years after the protected activities.

In the present case, plaintiff fails to allege any specifics except that the allegedly fraudulent actions pertain to plaintiff's lease and they rendered a delinquent record on her part. As a result, plaintiff fails to allege the fraud claim with the required specificity.  Even if the Court were to speculate that the alleged fraudulent acts are (1) Ms. Heimarck's alleged misrepresentation regarding the reduced rent and (2) Ms. Heimarck's statement regarding $400 move-in rent credit, plaintiff still fails to substantiate either allegation to survive defendant's summary judgment motion.  Accordingly, plaintiff fails to demonstrate that there is a genuine issue of material fact as to her fraud claim.

G.   The Merits of Plaintiff's Hate Crime Claim

Plaintiff also alleges that "[t]he sheer volume of these [incidents] has convinced me that these were hate crimes committed against us because of our race and disabilities."  Dkt. 10 at 2.  It is unclear what civil claim is asserted here.  The federal hate crime charge is prescribed in the Hate Crime Prevention Act, 18 U.S.C. § 249.  Dkt. 46 at 15.  However, this federal statute pertains to a criminal charge that does not provide a private cause of action.  *See Hood v. Pope*, No. H-14-1665, 2015 WL 225042, at *4 (S.D. Tex. Jan. 15, 2015); *Wittmer v. DuPont*, No. 14-cv-00091, 2014 WL 7366625, at *5 (D. Colo. Dec. 23, 2014).

If plaintiff is alleging a state claim, the plausible interpretation is a claim of malicious harassment under Wash. Rev. Code § 9A.36.083, commonly referred to as the Washington Hate Crime statute.  *See Armado v. Port of Seattle Police Dep't*, No. C15-0038, 2015 WL 4309268, at *3 (W.D. Wash. July 13, 2015).  This statute provides the victim of malicious harassment a private cause of action.  *See* Wash. Rev. Code § 9A.36.083.  To succeed on a claim for malicious harassment, a plaintiff must show that the defendant injured her, damaged her property, or threatened to inflict such an injury or damage because of plaintiff's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap.  *Armado*, 2015 WL

4309268, at *3 (citing *Gustafson v. City of W. Richland*, Nos. CV-10-5040, CV-10-5058, 2011 WL 5507201 (E.D. Wash. Nov. 7, 2011)).

In the present case, plaintiff indeed alleges a large volume of incidents, but does not supply sufficient evidence to demonstrate that the alleged actions were based on plaintiff's race, disability or other immutable characteristics.  *See Nelson v. Canon USA, Inc.*, No. C07-503Z, 2008 WL 410649, at *3 (W.D. Wash. Feb. 12, 2008); *San Antonio v. Heaton*, 90 Wash. App. 1033 (1998) (upholding the dismissal of plaintiff's malicious harassment claim where she failed to show that the alleged offensive action was racially motivated).  Accordingly, plaintiff cannot sustain her hate crime claim.

V.     CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment, Dkt. 46, and ORDERS that all claims against defendant are DISMISSED with prejudice.  The Court further ORDERS that defendant's motion to strike the letter of settlement offer, Dkt. 51, Ex. A-1 at 3-5, is GRANTED.  The Clerk of Court is directed to furnish a copy of this Order to the parties.

DATED this 9th day of March, 2016.

James P. Donohue

JAMES P. DONOHUE
Chief United States Magistrate Judge

ORDER - 22